# IN THE SUPREME COURT OF TEXAS

═════════════
No. 15-0581
═════════════

IN RE F.N. WILLIAMS, SR., AND JARED WOODFILL, RELATORS

═══════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════════

**PER CURIAM**

This case involves yet another mandamus proceeding concerning the City of Houston's equal rights ordinance, the referendum petition calling for its repeal, and the City Council's duties in response. *See In re Woodfill*, __ S.W.3d __, __, 2015 WL 4498229, at *7 (Tex. 2015) (per curiam) (directing the City Council to comply with its ministerial duties and either repeal the ordinance or submit it to popular vote). Though the ordinance is controversial, the law governing the City Council's duties is clear. Our decision rests not on our views on the ordinance—a political issue the citizens of Houston must decide—but on the clear dictates of the City Charter. The City Council must comply with its own laws regarding the handling of a referendum petition and any resulting election. When the law imposes a ministerial duty on the City Council and the City Council does not comply, and there is no adequate remedy by appeal, mandamus may issue. *Id.* at __, 2015 WL 4498229, at *1.

Pursuant to a citizen-initiated referendum petition, the Houston City Council ordered that the ordinance be submitted to voters in the upcoming November 2015 election. The City Council chose to describe the issue on the ballot as follows:

**PROPOSITION NO. 1**

**[Relating to the Houston Equal Rights Ordinance.]**

Shall the City of Houston repeal the Houston Equal Rights Ordinance, Ord. No. 2014-530, which prohibits discrimination in city employment and city services, city contracts, public accommodations, private employment, and housing based on an individual's sex, race, color, ethnicity, national origin, age, familial status, marital status, military status, religion, disability, sexual orientation, genetic information, gender identity, or pregnancy?

The ballot will allow voters to choose between "Yes" and "No" when voting on this proposition.

The Relators—two signers of the referendum petition—contest this wording. They urge that the City Charter requires an up or down vote on the ordinance itself rather than a vote on its "repeal." They also assert that the phrase "Houston Equal Rights Ordinance" should not be on the ballot. The City responds that this Court lacks jurisdiction to grant mandamus relief and interfere with the ongoing election process or to enjoin the City from using the phrase "Houston Equal Rights Ordinance" on the ballot. The City argues the Charter gives it discretion to submit the repeal of the ordinance—rather than the ordinance itself—to the voters, and the City may identify the ordinance as the "Houston Equal Rights Ordinance."

The Texas Election Code confers jurisdiction on this Court to "issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election." TEX. ELEC. CODE § 273.061. In *Blum v. Lanier*, we held that signers of a petition may seek

2

injunctive relief to correct deficiencies in the ballot language "if the matter is one that can be judicially resolved . . . without delaying the election." 997 S.W.2d 259, 263–64 (Tex. 1999). Although that case involved injunctive relief, the reasoning also applies to mandamus proceedings. *See id.* at 262 (relying on cases granting mandamus relief when holding the petition signers had standing to seek injunctive relief).

Although the Relators did not seek mandamus first in the court of appeals, we note "the imminence of the election places this case within the narrow class of cases in which resort to the court of appeals is excused." *Bird v. Rothstein*, 930 S.W.2d 586, 587 (Tex. 1996) (orig. proceeding); *see also* TEX. R. APP. P. 52.3(e). Indeed, for the same compelling reason that we exercise jurisdiction even though mandamus relief was not first sought in the court of appeals, we also immediately grant relief without requesting additional briefs on the merits. *See* TEX. R. APP. P. 52.8(b).

The City Council adopted the current ballot language on August 5, 2015. Two days later, the Relators petitioned for emergency and mandamus relief, averring that the Houston Voter Registrar requires final ballot language for printing no later than August 31, 2015, for the election on November 3, 2015, and that if this Court grants relief, the City Council should have time to meet and adopt revised language. The City Council filed a response but did not contest the deadlines identified by the Relators. In the past, we have granted relief without requesting additional briefing—especially in election cases—when time is critical, the issues are clear, and all parties have had a chance to respond. *See, e.g.*, *In re Palomo*, 366 S.W.3d 193, 194 (Tex. 2012) (per curiam) (noting that the Court granted mandamus relief "without opinion so as not to delay printing of the

3

ballots"); *In re Francis*, 186 S.W.3d 534, 538, 543 (Tex. 2006) (conditionally granting mandamus relief fourteen days after petition was filed); *In re Fitzgerald*, 140 S.W.3d 380, 381 (Tex. 2004) (per curiam) (conditionally granting mandamus relief three days after petition was filed); *In re Sanchez*, 81 S.W.3d 794, 795 (Tex. 2002) (per curiam) (noting that mandamus relief was conditionally granted with opinion to follow). Such situations are infrequent, but when prompt action is required, we may act accordingly.

Mandamus may issue to compel public officials to perform ministerial acts, as well as "to correct a clear abuse of discretion by a public official." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Id.*

Cities "generally have broad discretion in wording propositions" on the ballot. *Dacus v. Parker*, __ S.W.3d __, __, 2015 WL 3653295, at *4 (Tex. 2015). State or local laws, however, may limit this discretion. *See id.* at __, 2015 WL 3653295, at *2. The common law also limits it, demanding that the ballot "substantially submit the measure with definiteness and certainty" by identifying the measure's chief features and character and purpose. *Id.* at __, 2015 WL 3653295, at *4.

In this case, the Houston Charter outlines the City Council's duties. Once a referendum petition and certification properly invoke the City Council's duties, then the City Council

> shall immediately reconsider such ordinance or resolution and, if it does not entirely repeal the same, shall submit it to popular vote at the next city general election, or the Council may, in its discretion, call a special election for that purpose; and such

4

ordinance or resolution shall not take effect unless a majority of the qualified voters voting thereon at such election shall vote in favor thereof.

Houston, Tex., Charter, art. VII-b, § 3. Of its own accord, the City Council may also submit proposed ordinances to popular vote for adoption or repeal:

The Council, on its own motion, may submit to popular vote for adoption or rejection or repeal at any election any proposed ordinance or resolution or measure, in the same manner and with the same force and effect as provided in this Article for submission on petition.

*Id.* art. VII-b, § 4.

Because the Charter requires a majority vote "in favor" of the ordinance for it to take effect, the Relators argue that the City Council must submit the ordinance such that voters may vote directly "in favor" of the ordinance or against it. The City Council responds that the Charter allows it to ask voters whether they would "repeal" the ordinance. According to the City, a vote against repeal is the same as a vote in favor of the ordinance. The Charter authorizes the Council to "submit to popular vote for adoption or rejection or *repeal* at any election any proposed ordinance." *Id.* (emphasis added).

Although the parties argue about the meaning of a vote "in favor" of the ordinance, Section 5 of the Charter clearly requires the vote to be on the ordinance itself rather than its repeal:

The ballots used when voting upon such proposed and referred ordinances, resolutions or measures shall set forth their nature sufficiently to identify them, and shall also set forth upon separate lines the words "For the Ordinance" and "Against the Ordinance", or "For the Resolution" or "Against the Resolution."

*Id.* art. VII-b, § 5. Admittedly, the Texas Election Code preempts part of this mandate, allowing only the choice between "FOR" and "AGAINST," or else "YES" and "NO," to appear on the ballot. TEX.

5

ELEC. CODE § 52.073(a), (e). Nonetheless, the mandate that the vote be on the ordinance itself remains.

Here, the City Council determined that voters should choose between "Yes" and "No" regarding the repeal of the ordinance. The Charter, however, when read in conjunction with the Election Code, requires a choice of "Yes" or "No" (or "For" or "Against") as to the ordinance itself. Because the Charter clearly defines the City Council's obligation to submit the ordinance—rather than its repeal—to the voters and gives the City Council no discretion not to, we hold that this is a ministerial duty.

The Relators also argue that the words "Houston Equal Rights Ordinance" should not appear on the ballot because they are not in the ordinance and are politically slanted. Yet this is a *Houston ordinance*, and the ordinance itself contains the words "*Equal Rights*" in a heading. Even the referendum petition referred to "Ordinance No. 2014-530, otherwise known as the 'Equal Rights Ordinance.'" The City Council did not abuse its discretion by placing these words on the ballot.

In summary, the City Council has a ministerial duty to submit the ordinance to an affirmative vote by the people of Houston. As discussed above, the deadline for revising the ballot language is rapidly approaching. The City Council asserts that despite the short deadlines, a post-election election contest provides an adequate remedy by appeal. We have previously rejected this argument, holding that if "defective wording can be corrected" prior to the election, then "a remedy will be provided that is not available through a subsequent election contest." *Blum*, 997 S.W.2d at 264. No adequate remedy by appeal exists.

Accordingly, without hearing oral argument, we conditionally grant mandamus relief. TEX. R. APP. P. 52.8(c). The City Council is directed to word the proposition such that voters will vote directly for or against the ordinance. The writ will issue only if the City Council does not comply.


Opinion Delivered: August 19, 2015