# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-19-00553-CV
---

**In re Nelson Linder**

---
### ORIGINAL PROCEEDING FROM TRAVIS COUNTY
---

## M E M O R A N D U M   O P I N I O N

Relator Nelson Linder seeks a writ of mandamus ordering the City of Austin and the Austin City Council (collectively, "the City") to modify the ballot language of a proposition to adopt a citizen-initiated ordinance. Because the ballot language adopted by the City inadequately describes the proposed ordinance, we conditionally grant the writ.

## Background

Linder and approximately 31,900 registered Austin voters signed a citizen-initiative petition proposing an ordinance regarding the City's use of revenue from hotel-occupancy taxes. *See* Austin, Tex., Charter Art. IV, § 1 (allowing citizens of Austin to direct legislation by initiative by petition signed by sufficient number of qualified voters). The petition described the proposed ordinance as follows:

> A petitioned ordinance prioritizing the use of Austin's hotel occupancy tax revenue for the promotion and support of local cultural, heritage and environmental tourism; requiring voter approval and public oversight for

significant expansions of the Austin Convention center; and establishing other local requirements for the use of hotel occupancy tax revenue.

The proposed ordinance explains that its purpose is "to re-prioritize Austin's investment of Hotel Occupancy Tax revenue to promote and support tourism that emphasizes and enhances Austin's diverse culture, heritage, environment and locally owned businesses." The chief features of the proposed ordinance, stated generally, require the City to:

- spend 15% of hotel-occupancy tax revenue on cultural arts and 15% on historic preservation;

- limit its spending on the convention center to 34% of hotel-occupancy tax revenue;

- spend any of the remaining hotel-occupancy tax revenue "to support and enhance Austin's Cultural Tourism Industry"; and

- obtain voter approval for convention-center improvement and expansion costing more than $20,000,000.

After the Austin City Clerk certified that the citizen-initiated petition met the signature requirements of Austin's city charter, the Austin City Council ordered that the ordinance be submitted for voter approval in the upcoming November 2019 election. *See id.* § 3 (specifying form and validation of citizen-initiative petitions), § 4 (requiring council to pass the citizen-initiated ordinance as presented or to submit the citizen-initiated ordinance to a popular vote as presented). The City Council chose to submit the issue to voters as follows:

> Shall an ordinance be adopted that limits, beyond existing limits in state statute and city ordinance, the use of Austin's Hotel Occupancy Tax revenue, including the amount of Hotel Occupancy Tax revenue that may be used to construct, operate, maintain or promote the Austin Convention Center; requires any private third-party entity managing such funds to comply with open meetings and public information laws applicable to the city; and requires voter approval for

2

Convention Center improvements or expansions of more than $20,000,000 at an election for which the city must pay.

Linder filed this original proceeding asking us to order the City to correct the ballot language so that it adequately describes the ordinance proposed by the citizen-initiated petition.

## Jurisdiction

The Texas Election Code confers jurisdiction on this Court to "issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election." Tex. Elec. Code § 273.061. Signers of a citizen-initiated petition, like Linder here, may seek mandamus relief to correct deficiencies in ballot language "'if the matter is one that can be judicially resolved . . . without delaying the election.'" *In re Williams*, 470 S.W.3d 819, 821 (Tex. 2015) (quoting *Blum v. Lanier*, 997 S.W.2d 259, 263–64 (Tex. 1999)). Mandamus may issue to compel public officials to perform ministerial acts, as well as "'to correct a clear abuse of discretion by a public official.'" *Id.* (quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991)).

## Sufficiency of Ballot Language

Linder contends that the City's ballot language does not adequately describe the proposed ordinance because it (1) includes extraneous and misleading information regarding election costs and (2) fails to inform the voters that, under the proposed ordinance, hotel-occupancy tax revenue would be redirected from the convention center to cultural, arts, and other tourism-related programs. Cities "generally have broad discretion in wording propositions" on the ballot. *Dacus v. Parker*, 466 S.W.3d 820, 826 (Tex. 2015) (citing Tex. Elec. Code § 52.072(a)). State or local laws, however, may limit this discretion. *See id*. The common law

3

also limits it, demanding that ballot language "substantially submit the measure with definiteness and certainty." *Id*. at 826. A ballot fails to meet this common-law requirement if it "affirmatively misrepresent[s] the measure's character and purpose or its chief features" or if it "mislead[s] the voters by omitting certain chief features that reflect its character and purpose." *Id.*

Here, the ballot language adopted by the City Council states that the proposed ordinance would require voter approval for certain improvements or expansions to the convention center "at an election for which the city must pay." This quoted language suggests that such an election will necessarily cost the City additional money. The proposed ordinance, however, requires voter approval "at the next *required* uniform election date" (emphasis added). The ordinance itself does not require the City to hold a special election at the next uniform election date. Rather, the ordinance's inclusion of the word "required" and its omission of any requirement that the election be held within a given time mean that the ballot measure seeking voter approval must be included in the next otherwise-occurring election. The mandamus record establishes that the City's cost for conducting an election is based on the number of registered voters, not the number of races or, relevant here, measures that the City places on the ballot. In other words, the voter-approval component of the proposed ordinance—one of its chief features—does not require the City to incur any additional election costs.

The City argues that including the election-cost language is within its discretion because the statement is objectively accurate—i.e., the City has to pay for elections—and because it simply informs voters about possible additional costs the City might incur in the future should it choose to submit the issue to a vote in an election taking place other than November of an even-numbered year. *See* Tex. Elec. Code § 41.001(a) (allowing municipalities to hold

4

elections in May and November of odd- and even-numbered years). But even a partially accurate statement can be misleading in certain contexts. Here, the City's statement is misleading because it suggests that the proposed ordinance necessitates additional election costs and because it does not accurately reflect that it would be the City's choice to incur additional election costs by setting the issue outside an otherwise-occurring election. Thus, this election-cost language misrepresents the character of a chief feature of the proposed ordinance, which requires only that the voter approval occur "at the next required uniform election date." *See Dacus*, 466 S.W.3d at 826. As such, this ballot language fails to satisfy "the common-law standard preserving the integrity of the ballot." *See id.* at 822, 826 (ballot language must be submitted "with such definiteness and certainty that voters are not misled").

The ballot language also misleads voters by omitting a chief feature of the proposed ordinance—the intention that citizens vote on the prioritization of how hotel-occupancy tax revenue should be spent. *See id.* at 826. As noted above, the citizen-initiated petition emphasizes the prioritization requirement in its description of the proposed ordinance: "A petitioned ordinance prioritizing the use of Austin's hotel-occupancy tax revenue for the promotion and support of local cultural, heritage and environmental tourism . . . ." And the first substantive provision of the proposed ordinance establishes the prioritization requirement:

**PART 2. Section 11-2-7 of the Austin City Code is hereby repealed and replaced with the following provisions:**

**§ 11-2-7 ALLOCATION AND USE OF HOTEL OCCUPANCY TAX REVENUE**

(A)　This section applies to all revenue, including interest and appreciation, derived from the Hotel Occupancy Tax and collected by the City of Austin, as authorized under state law.

(B)     The revenue derived from the Hotel Occupancy Tax shall be prioritized for activities and expenditures that will directly promote, support and enhance tourism that is focused on Austin's unique and diverse culture, arts and music, historic preservation, parks, environmental resources, and locally owned businesses . . . .

Additionally, remaining provisions of the proposed ordinance specify prioritization of categories for cultural arts, historic preservation, and "Austin's Cultural Tourism Industry" (in addition to the allowable convention-center spending), to the potential exclusion of other uses allowed for this type of tax revenue. But the ballot language chosen by the City references only the ordinance's limits on the City's use of the hotel-occupancy tax revenue for the convention center, while omitting any mention of the prioritization requirement of the proposed ordinance. As such, the ballot language chosen by the City fails the common-law standard for ballot integrity because it "mislead[s] the voters by omitting certain chief features that reflect its character and purpose." *Dacus*, 466 S.W.3d at 826.

The City argues that it has not omitted a key feature of the proposed ordinance because its ballot language accurately explains that the ordinance will change the percentage allocations of the hotel-occupancy tax revenue. We disagree. Although the ballot language expressly explains the limit placed on convention-center spending, it does not mention the requirements specified for spending on other categories. As noted, the proposed ordinance would require not less than 15% of hotel-occupancy tax revenue to be spent on cultural arts and not less than 15% of hotel-occupancy tax revenue to be spent on historic preservation. The City argues that those specified percentage allocations need not be included in the ballot language because the Tax Code limits spending on those areas to 15% of hotel-occupancy tax revenue, which is the allocation provided for in the proposed ordinance, so those allocations are not

6

changes, or at least are not changes of "legal significance." *See* Tex. Tax. Code § 351.103 (allocation of revenue).[1] But Linder does not argue that the specific percentage allocations need to be included in the ballot language. Further, the common-law standard does not necessarily require that level of specificity. What it does require is that the City not omit or describe in a misleading way a key feature of the proposed ordinance. And here, the ballot language completely omits the proposed ordinance's emphases on prioritization of revenue funds towards cultural arts and historic preservation. Likewise, it also omits any mention of the third prioritization feature, which directs the City to prioritize "remaining funds"—the other 36% of hotel-occupancy tax revenue—to "Austin's Cultural Tourism Industry." In other words, out of all of the Tax Code's allowed uses for hotel-occupancy tax revenue, *see, e.g., id.* § 351.101, the proposed ordinance would require the City to prioritize spending on certain specific categories.[2]

In sum, the ballot language ordered by the City Council affirmatively misrepresents future election costs associated with the ordinance and also omits a chief feature of the proposed ordinance—the fact that the ordinance would require the City to prioritize the spending of hotel-occupancy tax revenue on cultural arts, historic preservation, and "Austin's Cultural Tourism Industry," to the exclusion of other uses allowable under the Tax Code. Accordingly, the ballot language does not substantially submit the proposed ordinance with such

---

[1] The Tax Code sections referred to in this opinion were amended in the most recent legislative session, and the amendments are effective on September 1, 2019. *See* House Bill 4170, § 14.003. These amendments have no bearing on the issues here. Accordingly, our references to the statute are based on the amended version because it will be effective at the time of the November election.

[2] The City also suggests that its ballot language is adequate because ultimately the proposed ordinance may impermissibly appropriate money in violation of the City Charter. *See* Austin, Tex., Charter Art. IV, § 1. But, as the City acknowledges, the validity of the proposed ordinance is not at issue in this proceeding.

definiteness and certainty that voters will not be misled. We hold that the ballot language is inadequate under the common-law standard for ballot integrity, and as a result, the City abused its discretion by adopting that language. *See Dacus*, 466 S.W.3d at 828 (discretion in wording propositions is limited by common law).

As noted, mandamus may issue to correct a clear abuse of discretion by a public official. *In re Williams*, 470 S.W.3d at 821. Further, because the "'defective wording can be corrected'" before the November 2019 election—the deadline for submitting the ballot to the printer is September 5, 2019—then "a remedy will be provided that is not available through a subsequent election contest." *In re Williams*, 470 S.W.3d at 823. As such, no adequate remedy by appeal exists. *Id.*

Accordingly, we conditionally grant mandamus relief. The City is directed to modify the ballot language consistent with this opinion by (1) deleting the phrase "at an election for which the city must pay"; and (2) adding information to inform voters that the proposed ordinance would require the City to prioritize the spending of hotel-occupancy tax revenue on cultural arts, historic preservation, and "Austin's Cultural Tourism Industry," to the potential exclusion of other allowable uses under the Tax Code. The writ will issue unless the City notifies the Clerk of this Court, in writing by noon on Wednesday, August 28, 2019, that it has adopted ballot language that complies with this opinion.

Due to the time-sensitive nature of this matter, the Court will not entertain motions for rehearing. *See* Tex. R. App. P. 2.

 

                               _____

                                Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Smith

Filed:   August 22, 2019