# IN THE SUPREME COURT OF TEXAS

---

No. 20-0708

---

IN RE THE GREEN PARTY OF TEXAS, ET AL., RELATORS

---

ON PETITION FOR WRIT OF MANDAMUS

---

### PER CURIAM

A candidate's "access to the ballot lies at the very heart of a constitutional republic." *In re Francis*, 186 S.W.3d 534, 542 (Tex. 2006). In this case we decide whether three Green Party of Texas candidates were improperly denied access to the ballot for failure to pay a filing fee. Strictly construing the statutory provisions at issue against ineligibility as we must, we hold that the court of appeals erred in declaring the candidates ineligible and grant their request for mandamus relief.

Democratic candidates for office, Chrysta Castañeda, Wendy Davis, and Mary Jennings (M.J.) Hegar, (collectively, Castañeda) sought mandamus relief in the Austin Court of Appeals to remove three Green Party candidates—David B. Collins, Katija "Kat" Gruene, and Tommy Wakely—from the November general election ballot. Castañeda asserted that the Green Party candidates were ineligible because they failed to pay the filing fee required by section 141.041 of the Texas Election Code. *See* TEX. ELEC. CODE § 141.041(a) (providing that a candidate who is nominated by convention must pay a filing fee or submit a valid signature petition).

Under Election Code section 145.003, the co-chairs of the Green Party, Alfred Molison and Laura Palmer, were the party officers responsible for declaring a Green Party candidate ineligible. *See id.* § 145.003(b)(1). Under subsection (f), a candidate may be declared ineligible if "facts indicating that the candidate is ineligible are *conclusively established* by another public

record." *Id.* § 145.003(f)(2) (emphasis added). "When presented with . . . another public record containing information pertinent to a candidate's eligibility, the appropriate authority shall promptly review the record. If the authority determines that the record establishes ineligibility as provided by Subsection (f), the authority shall declare the candidate ineligible." *Id.* § 145.003(g). Castañeda asserted that the party co-chairs violated a ministerial duty imposed by law by failing to declare the three Green Party candidates ineligible after public records were presented to the co-chairs conclusively establishing that the candidates did not pay the filing fee or submit petitions.

The court of appeals agreed. ___ S.W.3d ___, ___ (Tex. App.—Austin 2020, orig. proceeding). The court held that the Green Party candidates were ineligible to be candidates on the November ballot based on their failure to pay the filing fee. *Id.* Therefore, the court held, when presented with the public record conclusively establishing this failure, the co-chairs had a "statutory duty" under section 145.003 to declare the Green Party candidates ineligible. *Id.* The court conditionally granted relief and directed the co-chairs to declare the Green Party candidates ineligible to appear as the Green Party nominees and to take all steps within their authority to ensure that the candidates' names did not appear on the ballot. *Id.* at ___. Chief Justice Rose dissented, stating that mandamus relief was not appropriate based on the record before the court. *Id.* at ___ (Rose, C.J., dissenting).

To be entitled to mandamus relief, Castañeda was required to establish that the Green Party co-chairs had a ministerial duty to declare the candidates ineligible. *See In re Williams*, 470 S.W.3d 819, 821 (Tex. 2015) (holding that mandamus may issue to compel performance of a ministerial act). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Id.*

2

(quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991)). For the reasons explained below, Castañeda failed to prove the Election Code clearly spelled out the duty of the co-chairs to declare the Green Party candidates ineligible for their failure to pay the filing fee, and the court of appeals therefore erred in ordering their removal from the ballot.

The Election Code distinguishes between the process of nominating candidates for public office by nominating conventions and by applications to appear on a primary ballot. *See In re Tex. House Republican Caucus PAC*, ___ S.W.3d ___, ___ (Tex. 2020). A candidate who is nominated by convention, as were the Green Party candidates here, must pay a filing fee or submit a signature petition under section 141.041:

> (a) In addition to any other requirements, to be eligible to be placed on the ballot for the general election for state and county officers, a candidate who is nominated by convention under Chapter 181 or 182 must:
>
> (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or
>
> (2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

TEX. ELEC. CODE §141.041.

Section 141.041 was enacted in 2019 and has been the subject of constitutional and other challenges. *See, e.g.*, *Miller v. Hughs*, No. 19-CV-00700-RP (W.D. Tex. July 11, 2019). The Fourteenth Court of Appeals recently addressed one such challenge. *Hughs v. Dikeman*, ___ S.W.3d ___ (Tex. App.—Houston [14th Dist.] 2020, no pet. h.). In that case, Libertarian Party candidates, who are also nominated by convention and subject to section 141.041, sued the Secretary of State asserting that the section violates the Texas Constitution. The candidates also contended that an accompanying advisory promulgated by the Secretary of State—Election

3

Advisory No. 2019-13—setting a December 9 deadline for paying the filing fee conflicts with the Election Code and the Texas Constitution. *Id.* at ___. The court of appeals held that the filing fee requirement was not unconstitutional but went on to hold that the advisory's December 9 deadline to pay the fee conflicted with section 141.041. *Id.* at ___.

The court explained that section 141.041 does not set a deadline for compliance but that the requirements apply only to the candidates actually nominated at a party's nominating convention generally held in March or April of the election year. *Id.* at ___. Candidates who intend to seek a nomination at a convention must file a notarized application in December before the convention. *Id.* at ___ (citing TEX. ELEC. CODE §§ 141.031, 172.023(a), 181.031–.033). The advisory, by requiring payment of the filing fee before the nominating convention, expanded the requirements in 141.041 from all *nominated* candidates to all candidates *seeking* nomination. *Id.* at ___. The court ultimately held that payment of the filing fee under section 141.041 was still required, but the court affirmed the trial court's order temporarily enjoining the Secretary of State from refusing to certify third-party nominees on the grounds that the nominees did not pay a filing fee *at the time of filing*. *Id.* at ___.

We agree with the Fourteenth Court of Appeals that under section 141.041 only a convention-nominated candidate is required to pay the filing fee. *See* TEX. ELEC. CODE §141.041(a) ("[A] candidate who is nominated by convention . . . must pay a filing fee . . . ."). Therefore, we also agree that the Secretary of State's advisory requiring payment of the filing fee *at the time of filing* an application is not required by, and indeed conflicts with, the Election Code. *See id.* Section 141.041 does not include a deadline for compliance, but as we explained in *In re Francis*, when an Election Code provision does not provide explicit guidance, we apply a presumption against removing parties from the ballot. 186 S.W.3d at 542.

4

In *In re Francis*, Robert Francis, a candidate for the Texas Court of Criminal Appeals, filed a signature petition but several pages did not state the place on that court for which he was running as required by the Election Code. *Id.* at 537. Another candidate challenged the petition and the trial court ordered that Francis be decertified and not listed as a candidate. *Id.* at 538. Although we agreed that omission of statutorily required information on a petition rendered the signatures invalid, we disagreed that the consequence for noncompliance was exclusion from the ballot without an opportunity to remedy defects. *Id.* at 539. We explained that an abatement and opportunity to cure complied best with the purposes of the Election Code, was the fairest remedy, and was the remedy likely to cause the least harm. *Id.* at 541–42. We stated that such a remedy "advances the interests of those in whose names elections are conducted—the people." *Id.* at 542.

In this case, the court of appeals concluded that because the Green Party candidates had not paid the filing fee, they were ineligible and the co-chairs had a statutory duty to declare them ineligible. ___ S.W.3d at ___. The court relied on section 145.003, which requires the co-chairs to review a public record presented to them concerning a candidate's eligibility and declare a candidate ineligible if "facts indicating that the candidate is ineligible are *conclusively established* by another public record." *Id.* at ___ (quoting TEX. ELEC. CODE § 145.003(f), (g)) (emphasis added). "In election cases . . . we are constrained in our interpretation by the principle that any statutory provision that restricts the right to hold office must be strictly construed against ineligibility." *State v. Hodges*, 92 S.W.3d 489, 494–95 (Tex. 2002); *see also In re Francis*, 186 S.W.3d at 542 & n.34. We therefore interpret the statutory provisions at issue with a candidate's access to the ballot in mind.

Castañeda presented a public record to the co-chairs showing that as of August 17, the Green Party candidates had not paid the filing fee. As previously noted, section 141.041 requires the filing fee but contains no deadline for its payment, *see* TEX. ELEC. CODE § 141.041, and the only potential applicable deadline in the Secretary of State's election advisory conflicts with that provision. *Hughs*, ___ S.W.3d at ___. Strictly construing these sections against ineligibility, we disagree that the public document demonstrating that the Green Party candidates had not paid the filing fee as of August 17 *conclusively established* that they were ineligible. To be "*eligible* to be placed on the ballot," the Green Party Candidates were required to pay the filing fee or file signature petitions. TEX. ELEC. CODE § 141.041 (emphasis added). The co-chairs did not have a ministerial statutory duty to declare the candidates ineligible, as the law did not clearly spell out their duty on August 17 when the candidates had not yet paid the filing fee such that nothing was left to the exercise of their discretion. *See In re Williams*, 470 S.W.3d at 821.

The court of appeals ordered the co-chairs to declare the Green Party candidates ineligible and take necessary steps to ensure their names did not appear on the ballot. ___ S.W.3d at ___. But the court did not address a deadline for payment, nor did it otherwise allow for payment of the fee. And under *In re Francis*, an opportunity to cure should be provided when a candidate could still comply with Election Code requirements. 186 S.W.3d at 541–42 (noting that an opportunity to cure complies with the purposes of the Election Code and avoids potential constitutional problems that "might be implicated if access to the ballot was unnecessarily restricted"). "The public interest is best served when public offices are decided by fair and vigorous elections, not technicalities leading to default." *Id.* at 542. In the absence of recognizing a deadline for paying the filing fee or giving the candidates an opportunity to

6

comply, the court of appeals erred in ordering the Green Party candidates removed from the ballot on August 19.

A candidate's name is to be omitted from the ballot if the candidate is declared ineligible on or before the seventy-fourth day before election day, which was August 21 this year. *In re Tex. House Republican Caucus PAC*, ___ S.W.3d at ___ (citing TEX. ELEC. CODE § 145.039). Because the August 21 deadline to remove a candidate from the ballot due to ineligibility has passed, removal from the ballot is no longer a remedy for Castañeda. *See id.* at ___. Accordingly, we direct the court of appeals to vacate its conditional grant of mandamus relief and we vacate the court's order requiring a declaration that David B. Collins, Katija "Kat" Gruene, and Tommy Wakely are ineligible to appear as Green Party nominees on the November 2020 ballot.

Castañeda and amici assert that this case is moot, arguing that it is too late to add or delete names from the ballot. However, the Secretary of State has indicated that changes to the ballot are not precluded by statute and relief is still possible. We recognize that changes to the ballot at this late point in the process will require extra time and resources to be expended by our local election officials. But a candidate's access to the ballot is an important value to our democracy. *In re Francis*, 186 S.W.3d at 542. And an added expense is not a sufficient justification to deny these candidates that access.

**OPINION DELIVERED:** September 18, 2020

7